UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ANTHONY GARVINS,

                         Plaintiff,                         Case No. 2:09-cv-48

v.                                                          Honorable Gordon J. Quist

GERALD HOFBAUER et al.,

                         Defendants.
_____/


## REPORT AND RECOMMENDATION

             Plaintiff is currently incarcerated at Pine River Correctional Facility.  In his *pro se*

complaint, he sues 34 Michigan Department of Corrections (MDOC) employees.  He sues the

following Marquette Branch Prison (MBP) employees: Warden Gerald Hofbauer, Resident Unit

Manager (RUM) Fred Govern, Assistant Resident Unit Supervisor (ARUS) Chad Lacount,

Grievance Coordinator Mike Laitinen, Assistant Deputy Warden Cathy Aalto, Health Unit Manager

Larry Hill, Registered Nurse (RN) John Kimsel, Unknown Jakubiszyn, Ambre Ehle, and Doctor

Jeffery Stieve.   Plaintiff sues the following Baraga Maximum Correctional Facility (AMF)

employees: Warden Gary Capello; Deputy Warden Linda Tribley; Assistant Deputy Wardens L.

Larson and W. Jondrew; Resident Unit Officer (RUO) J. Burke; Grievance Coordinators Unknown

LaPlante and S. Raymond; Health Unit Manager Gloria Hill; Doctor W. Warren; Supervisor RN

Jeannie Stephenson; RNs Glen Richards, Clara Chosa and Anne M. Morin; and MDOC Region I

Health Administrator Terry Malloy.  Plaintiff sues the following Chippewa Correctional Facility

(URF) employees: Warden Greg McQuiggin; Deputy Warden John Boynton; Assistant Deputy

Warden Connie Horton; ARUS Chris McKee; RUM Glen Lemon; Assistant Deputy Warden John

Andrzejak; Grievance Coordinator James Armstrong; Doctor Unknown Crumpton; Health Unit Manager Mark West; and RN Dawn Eicher.

Plaintiff asserts that he has a serious health condition and medical needs arising from a lung disorder. (Compl. at 9-10, 21.) He alleges that this condition is seriously aggravated by Environmental Tobacco Smoke (ETS). (*Id.*) Plaintiff filed six grievances against MBP staff between February 1, 2008, and July 7, 2008, alleging that those employees had been deliberately indifferent to his serious health condition and medical needs. (*Id.* at 3.) Plaintiff alleges that he was retaliated against for filing those grievances and another lawsuit, which was filed in November 2007. (*Id.* at 6.)

Plaintiff arrived at MBP on December 4, 2007, and requested to be placed in tobacco-free housing. (Compl. at 6.) He made numerous requests between December 4, 2007, and May 6, 2008, to be given tobacco-free housing. (*Id.* at 6-9.) On May 8, 2008, he was transferred to AMF, allegedly in retaliation for his grievances and complaints. (*Id.*) Between May 15, 2008, and October 3, 2008, Plaintiff made a number of requests to be placed in an tobacco-free housing unit, requests for urgent medical health care, and requests for the other accommodations needed for his medical issues. (*Id.* at 13-20.) Plaintiff also filed grievances against many of the AMF Defendants. (*Id.* at 14-20.)

On October 10, 2008, he was transferred to Chippewa Correctional Facility. Plaintiff alleges that he was transferred in retaliation for the grievances and lawsuit that he filed against AMF employees. (*Id.* at 20.) Upon arrival at URF, Plaintiff informed the URF staff that he had been given a special accommodation to be provided ETS-free housing. (*Id.*) In October and November 2008, Plaintiff submitted multiple urgent health care requests for medical care and placement in tobacco-

free housing. (*Id.* at 21- 23.)  Plaintiff also filed grievances against some of the URF employees. (*Id.* at 23-25.)

As a result of the ETS exposure, Plaintiff alleges that he experienced severe chest pain, trouble breathing, shortness of breath, persistent cough, dizziness, feeling of congested lung and other ETS related complications. (Compl. at 16.)  He seeks compensatory and punitive damages in varying amounts against each Defendant.  (*Id.* at 28-31.)

On June 26, 2009, the Court dismissed Plaintiff's complaint against Defendants Gary Capello, James Armstrong, Greg McQuiggin, John Boynton, Connie Horton, Chris McKee, Glen Lemon, John Andrzejak, Terry Malloy, W. Jondrew, Unknown LaPlante and S. Raymond.  (Docket #22.)

Presently before the Court are the Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56, filed by Defendants Hofbauer, Govern, Lacount, Laitinen, Aalto, Larry Hill, Kimsel, Jakubiszyn, Ehle, Stieve, Tribley, Larson, Gloria Hill, Richards, Chosa, Morin, Stephenson, West, Eicher and Crumpton[1].  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party

---

[1]Crompton.

opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that his Eighth Amendment rights were violated by Defendants' actions because they caused him to be exposed to environmental tobacco smoke (ETS) in his cell at MBP. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. When prison officials ignore a prisoner's serious medical condition such as allergy or asthma relating to second-hand smoke and do not make a good-faith effort to enforce non-smoking policies or to segregate a prisoner from exposure to smoke, a prisoner may state an Eighth Amendment claim based upon exposure to environmental tobacco smoke. *See Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)(citing *Hunt v. Reynolds*, 974 F.2d 734, 726 (6th Cir. 1992)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993) is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[2] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id.* Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id*. at 36.

Defendants offer a copy of Plaintiff's special accommodation notice, which provided for Plaintiff to be placed in tobacco free housing from April 25, 2008, to April 25, 2050. (Defendants' Exhibit 4, docket #66.) The Court notes that since February 1, 2009, inmates in

---

[2]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

Michigan prisons have been forbidden to smoke or possess tobacco. *See* MDOC Policy Directive 01.03.140(G, I) (Defendants' Exhibit A). Defendants contend that prior to that, all Michigan prisons were smoke-free, but that in recognition of the fact that prisoners sometimes break the rules, prisons had created special tobacco-free housing. Plaintiff was housed in such units while incarcerated at MBP, AMF, and URF. In support of this assertion, Defendants offer Plaintiff's "history of cell usage," the affidavits of Storey, Alexander and Capello, and AMF's Tobacco-Free Housing document. (Defendants' Exhibits 5, 6, 7, 8, and 9, docket #66.)

Gerald Hofbauer attests that in 2007, an American Correctional Association (ACA) Environmental Health Standards Inspection was performed at MBP, and AMF Warden Gary Capello and URF Warden John Boynton stated that the same testing was performed at their facilities in 2008 and 2009. The tests at these facilities showed that all of the housing units were in compliance with the Indoor Air Quality Standards. (Defendants' Exhibits 8, 15, and 16.) In addition, Hofbauer, Capello, and Boynton attested that prison staff at MBP, AMF, and URF continuously cracked down on inmates who broke the rules by issuing misconduct tickets for smoking in prison. (Defendants' Exhibits 8, 15, and 16.) Based on the record, it appears that Defendants took reasonable measures to ensure that Plaintiff would not be exposed to ETS. The fact that such measures did not result in perfect compliance, is insufficient to show that Defendants acted with deliberate indifference. Therefore, Defendants are entitled to summary judgment on Plaintiff's ETS claim.

Plaintiff also claims that Defendants Chosa, Richards, Stephenson and Jakubiszyn were deliberately indifferent to Plaintiff's medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of

decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

With regard to Defendant Chosa, Plaintiff claims that she was medically indifferent to him on August 19, 2008. Plaintiff filed grievance AMF 08-09-3655-12e4 on Defendant Chosa, asserting that Defendant Chosa was aware of Plaintiff's medical accommodation for tobacco free housing, but was refusing to provide Plaintiff with such housing. In the step I response to this grievance, it was noted that Plaintiff had a special accommodation for tobacco free housing and that unit staff had been notified of the accommodation. In the step II response, Jeannie Stephenson, R.N., stated that review of the housing unit log book and health care urgent / emergent log book, indicated patient out to health services on August 19, 2008. In addition, Stephenson noted that housing staff was aware of Plaintiff's special accommodation and Plaintiff was encouraged to discuss housing issues with his Assistant Resident Unit Supervisor or Resident Unit Manager. Finally, the step III response affirmed the step I and II responses, and noted that Plaintiff had been housed in a smoke free housing unit. (Defendants' Exhibit #4, docket #112.)

Plaintiff's medical records show that he was seen by Defendant Richards on August 30, 2008, during which time Plaintiff complained about smoking in his housing unit. Defendant Richards wrote in the medical record that on July 8, 2008, Plaintiff had been instructed by Nurse Codere to notify his Assistant Resident Unit Supervisor of other prisoners smoking. (Defendants' Exhibit #1, docket #112.) In addition, Jeannie Stephenson attests that Plaintiff's electronic medical records indicate no documented requests for urgent medical care on August 19, 2008, August 30, 2008, or September 3, 2008. (Defendants' Exhibit 6, docket #112.)

Plaintiff claims that Defendant Stephenson was deliberately indifferent to his complaints regarding smoking in the units as the step II respondent. Plaintiff filed grievance number AMP 08-09-3731-12d3 on Defendant Stephenson on September 3, 2008. According to the step II response to Plaintiff's grievance, which was completed by Regional Health Manager Terry Malloy,

Defendant Stephenson has no control over the health care of an individual, and is merely the step II responder in Region I. (Defendants' Exhibit 5, docket #112.)

Finally, Plaintiff claims that on February 9, 2008, Defendant Jakubiszyn refused to provide him with supplemental oxygen in violation of his Eighth Amendment rights. Plaintiff's medical records show that he was seen by Defendant Jakubiszyn on the above date and reported that the "block" was being cleaned, which made it difficult for Plaintiff to breath. Plaintiff requested oxygen. Defendant Jakubiszyn assessed Plaintiff and noted that he may have been irritated by the cleaning chemicals, but that the clinical findings did not necessitate the use of oxygen. Defendant Jakubiszyn further stated that Plaintiff would be allowed to rest in health services until most of the cleaning had been completed, and that Plaintiff would be instructed in "oxygen use when saturation low & clinical signs of distress present." (Defendants' Exhibit 24, docket #66.)

As noted above, the evidence in the record fails to show that Plaintiff suffered from a serious medical condition, or that Defendants Chosa, Richards, Stephenson and Jakubiszyn were deliberately indifferent to such a condition. Therefore, the undersigned recommends that Defendants Chosa, Richards, Stephenson and Jakubiszyn be granted summary judgment on this claim.

Defendants Chosa, Richards, Hobauer, Govern, LaCount, Aalto, Larry Hill, Kimsel, Jakubiszyn, Ehle, Tribley, Gloria Hill, West and Eicher assert that they are entitled to summary judgment on Plaintiff's retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendant Richards retaliated against him for filing a grievane on July 17, 2008, by refusing to examine Plaintiff or schedule a doctor's appointment on August 30, 2008. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff has met the first prong of the test set forth in *Thaddeus-X*.

With regard to the second prong of the test set forth in *Thaddeus-X*, Defendant Richards instructed Plaintiff to notify his Assistant Resident Unit Supervisor about prisoners smoking in the unit. (Defendants' Exhibit 1, docket #112.) As a registered nurse working in health services, Defendant Richards had no authority to control prisoners in the housing units. (Defendants' Exhibit 10, ¶ 3, docket #112.) In addition, Defendant Richards attests that he did not know about the July 17, 2008, grievance by Plaintiff at the time of the August 30, 2008, appointment and that, even if he had known, he would have provided Plaintiff with the same level of treatment. (Defendants' Exhibit 10, ¶¶ 6-7, docket #112.) Therefore, it does not appear as if Plaintiff can show that Defendant Richard's conduct was motivated by a desire to retaliate against Plaintiff, as set forth in the third element of the *Thaddeus-X* test. Consequently, the undersigned recommends dismissal of Plaintiff's retaliation claim against Defendant Richards.

Plaintiff claims that Defendant Chosa was responsible for the denial of medical treatment "via retaliation and deliberate indifference." In his response to Defendants' motion for summary judgment, Plaintiff states that Defendant Chosa told him that she was aware of Plaintiff's grievances against medical staff and did not care about his medical detail. Defendants claim that Plaintiff did not exhaust this claim against Defendant Chosa. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The

Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants offer the affidavit of Richard B. Stapleton, who is employed by the MDOC as the Administrator of the Office for Legal Affairs. Stapleton attests that Plaintiff filed grievance number AMF-2008-09-3655-12d4 at step I against Defendant Chosa, claiming that she did not honor his special accommodation notice for a tobacco free environment. Stapleton attests

that Plaintiff failed to assert that Defendant Chosa acted in retaliation in his step I grievance, but raised this issue for the first time at step II. Therefore, Defendants assert that Plaintiff failed to properly grieve this claim. In the opinion of the undersigned, Defendants are mistaken. As noted above, Plaintiff is required to grieve the alleged misconduct of Defendant Chosa. However, Plaintiff is not required to set forth his underlying legal theory in his grievance. Therefore, Defendant Chosa is not entitled to summary judgment for lack of exhaustion.

Defendants Hobauer, Govern, LaCount, Aalto, Larry Hill, Kimsel, Jakubiszyn, Ehle, Tribley, Gloria Hill, West and Eicher also state that they are entitled to summary judgment on this claim for lack of exhaustion because Plaintiff did not specifically state that Defendants were acting out of a desire to retaliate against him for engaging in constitutionally protected conduct. However, as noted above, so long as Plaintiff specifies the conduct being grieved, he need not set forth his underlying legal theory. Therefore, Defendants Hobauer, Govern, LaCount, Aalto, Larry Hill, Kimsel, Jakubiszyn, Ehle, Tribley, Gloria Hill, West and Eicher are not entitled to summary judgment for lack of exhaustion.

However, based on the record in this case, the undersigned concludes that Defendant Chosa is entitled to summary judgment on the merits of Plaintiff's retaliation claim. As noted above, Defendant Chosa is employed as a registered nurse. As such Defendant Chosa is not responsible for any decision to deny Plaintiff tobacco free housing. Nor could Defendant Chosa control the behavior of prisoners in the housing units. (Defendants' Exhibit 7, ¶¶ 4-5, docket #112.) Therefore, Defendant Chosa did not take the asserted adverse action as required for a retaliation claim under *Thaddeus-X*.

With regard to Defendants Hobauer, Govern, LaCount, Aalto, Larry Hill, Kimsel, Jakubiszyn, Ehle, Tribley, Gloria Hill, West and Eicher, Plaintiff claims that they retaliated against

him when they transferred him from MBP to AMF, and from AMF to URF. As noted by Defendants, transfers are common among prisons, so that a transfer would not typically deter a prisoner of ordinary firmness from engaging in protected conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). However, Plaintiff also claims that Defendants refused to transfer Plaintiff to a tobacco free housing unit in retaliation for his use of the grievance system, and for filing lawsuits. Such conduct, if it resulted in Plaintiff's exposure to ETS to the detriment of his medical condition, could potentially deter a prisoner of ordinary firmness from continuing to engage in protected conduct.

However, as noted above, since February 1, 2009, inmates in Michigan prisons have been forbidden to smoke or possess tobacco. *See* MDOC Policy Directive 01.03.140(G, I) (Defendants' Exhibit A). Defendants contend that even prior to February 1, 2009, that, all Michigan prisons were smoke-free, but that in recognition of the fact that prisoners sometimes break the rules, prisons had created special tobacco-free housing. Plaintiff was housed in such units while incarcerated at MBP, AMF, and URF. In support of this assertion, Defendants offer Plaintiff's "history of cell usage," the affidavits of Storey, Alexander and Capello, and AMF's Tobacco-Free Housing document. (Defendants' Exhibits 5, 6, 7, 8, and 9, docket #66.)

Assistant Deputy Warden James Alexander attests that Plaintiff was classified to administrative segregation from December 4, 2007, through January 22, 2008, and that prisoners in administrative segregation are prohibited from possessing tobacco materials. On January 22, 2008, Plaintiff was reclassified from administrative segregation to the general population and was placed in G-block in cell second 23. Plaintiff remained in that cell until January 29, 2008, when he was placed in Cell G First 4 because of his need for tobacco-free housing. Plaintiff remained in this cell until his transfer to another facility on May 9, 2008. Alexander further attests that the annual

sanitation report dated December 15-17, 2008, shows that ventilation tests and balance reports were conducted and air vents in respective prisoner sleeping areas and Officers' stations were tested and found to be compliant with confined 10 cubic feet per minute (CFM) minimum per person. (Defendants' Exhibit 7, ¶¶ 5-7, docket #66.)

Defendant Capello attests that Plaintiff arrived at AMF from MBP on May 9, 2008, and Plaintiff was placed in Housing Unit 5, which was not designated tobacco-free. However, Defendant Capello states that smoking was not permitted in the housing unit, or in any MDOC building, pursuant to Policy Directive 01.03.140. On May 23, 2008, Plaintiff was moved to housing unit 7, cell 127, where he remained until September 8, 2008, when he was moved to cell 101, which was designated as a tobacco-free cell. On October 10, 2008, Plaintiff was transferred to URF. Defendant Capello further attests that air quality testing by the American Correctional Association (ACA) was completed at AMF on May 28, 2008, and May 27, 2009, which showed that the air quality and ventilation of the facility were compliant with Michigan's environmental health standards. Finally, Defendant Capello attests that staff strictly enforced the no smoking rules at the facility and issued misconduct citations as appropriate between May of 2008 and October of 2008, while Plaintiff was incarcerated at AMF. (Defendants' Exhibit 8, ¶¶ 2-5, docket #66.) Reports of the air quality testing from 2008 and 2009 are offered as attachments to Defendant Capello's affidavit. (Defendants' Exhibit 8, attachments.)

The undersigned concludes that, based on the record, Plaintiff has failed to establish that he was exposed to ETS to the detriment of his health. Therefore, Plaintiff cannot show that an adverse action was taken which would deter a prisoner of ordinary firmness from continuing to engage in protected conduct. Consequently, Defendants Hobauer, Govern, LaCount, Aalto, Larry

Hill, Kimsel, Jakubiszyn, Ehle, Tribley, Gloria Hill, West and Eicher are entitled to summary judgment on Plaintiff's retaliation claims.

Defendants Aalto and Ehle contend that they are entitled to summary judgment because they were not personally involved in the underlying misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must

show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

A review of the record in this case reveals that the sole involvement of Defendants Aalto and Ehle was as step I responders to Plaintiff's grievances. Defendants Aalto and Ehle cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Aalto and Ehle are entitled to summary judgment for lack of personal involvement.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital*

*v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[3]   The State of Michigan has not consented to civil rights suits in the federal courts.  *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  The Eleventh Amendment therefore bars official-capacity suits for damages against its employees.  Therefore, any official capacity claims are properly dismissed.

Defendants  also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 816.  If the court

---

[3]The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment.  *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As noted above, Defendants did not violate Plaintiff's constitutional rights. Accordingly, they are entitled to qualified immunity.

Finally, Defendant Robert Crompton has filed a motion to dismiss for improper service (docket #91) pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. In the brief in support, Defendant Crompton states that on October 29, 2009, summons was re-issued as to Defendant "Unknown Crompton" and on November 30, 2009, the United States Marshal Service filed an acknowledgment of service on behalf of "Dr. Crompton" asserting a service process date of November 3, 2009. (Defendant Crompton's Exhibit A, docket #68.) The Acknowledgment of Service reflects that Dr. Crompton was purportedly served by serving The Corporation Company, located at 30600 Telegraph Road, Bingham Farms, Michigan 48025. The delivery section contains only a Corporation Company stamp and indicates only that it was served by certified mail, but delivery was not restricted. (Defendant Crompton's Exhibit A, docket #68.) Defendant Crompton claims that because the manner of service was ineffective pursuant to both the Federal Rules of Civil Procedure and the Michigan Rules of Civil Procedure, he is entitled to dismissal of this action.

Rule 4(e) sets forth the manner in which an individual defendant must be served with process in an action filed in the United States District Courts. Specifically, service may be effected by delivering a copy of the summons and complaint to the individual personally, leaving a copy of the summons and complaint at the individual's dwelling or with a person of suitable age and discretion at the residence, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process on behalf of an individual. Fed. R. Civ. P. 4(e).

In addition, proper service of process under Michigan law is set forth in MCR 2.105(A), which states that process may be served by delivering a copy of the Summons and Complaint to the defendant personally, or by sending a copy by registered mail or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail. Michigan law requires that a copy of the return receipt signed by the defendant be attached to the proof showing service. MCR 2.105(A)(2).

Defendant Crompton states that service was improper because it was made upon a corporation that was not his authorized agent. Defendant was employed by Correctional Medical Services. This procedure for service is the procedure that Correctional Medical Services has requested that the court use to serve the doctors who are employed by Correctional Medical Services. However, Defendant Crompton is technically correct that he did not receive proper service of process. Accordingly, Defendant Crompton's motion to dismiss (docket #91) should be granted.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for dismissal and summary judgment. Accordingly, it is recommended that Defendants' motions (docket #65, #91, and #111) be granted and this case be dismissed in its entirety.[4] In addition, should the court adopt the report and recommendation in this case, Plaintiff's pending motions for default summary judgment and for injunctive relief (docket #70 and #106) are properly denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same

---

[4]The Court notes that two defendants, Burke and Warren, were never served in this case.

reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 23, 2010